[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Motion For Order In Aid of Judgment (Modification of Mortgage) [147]
This is still another chapter in an unending saga. The court now must determine the parties' compliance with the court's earlier order to enter into a mortgage modification agreement "consistent with" the terms set forth in a March 14, 1995 letter to plaintiff Gebbie's counsel from counsel for ALI, Inc. ALI was the holder of the notes and mortgages which are the focus of this action. ALI later sold them to the defendant Cadle Company.
Basically, this is an action for specific performance of a contract. Gebbie had two loans from the New England Savings Bank. The loan amounts were $280,000 and 320,000. There was a note and mortgage to the bank for each loan. A separate Gebbie property secured each loan. The Bank failed. The Federal Deposit Insurance Corporation (FDIC) became the receiver for the failed bank. The FDIC sold the two Gebbie notes and mortgages to ALI, Inc. (ALI).
ALI began a separate action to foreclose each of the mortgages.
ALI and Gebbie then agreed to restructure Gebbie's debt. ALI's counsel wrote to Gebbie's attorney on March 14, 1995. That letter contained the terms of the restructuring. Gebbie accepted its terms. The letter provided:

CT Page 9451 "This letter shall serve to confirm our conversation of March 13, 19995 [sic]. ALI will agree to settle its claims with Mr. Gebbie as follows:
 "1. Payment of $40,000.00 upon closing with a nonrefundable deposit of $4,000.000 [sic] to be paid within two days hereof.
 "2. The execution of a promissory note and mortgage modification agreement which will modify the note to $160,000.00 at 9.5 percent fixed rate on a thirty (30) year amortization payable over a ten (10) year term.
 "The offer must be closed within thirty days hereof unless upon request ALI should agree to an extension thereof. If the note is successfully repaid then said obligations shall be deemed fully satisfied otherwise to remain in full force and effect."
Letter, March 14, 1995, from Paul M. Geraghty (counsel for ALI, Inc.) to Mark Block, Esq. (counsel for Gebbie).
ALI and Gebbie agreed Gebbie would pay $40,000 upon the closing, $4,000 of which was to be paid within two days as a nonrefundable deposit. The $4,000 was paid by Gebbie and accepted by ALI. The debt which was in the order of $600,000 was to be reduced to $160,000. The "$160,000 [was] payable over a ten year term with a thirty year amortization at a stated rate of interest; (2) the total obligations were to be canceled if Gebbie fully complied with the repayment terms; and (3) in the event of default, the full balance would be reinstated. The effect of this agreement was to consolidate the two notes and mortgage obligations and, in consideration of a payment of $40,000, to restructure the agreement. The letter agreement called for acceptance in the form of a $4000 deposit. This deposit was tendered by Gebbie and accepted by ALI." Gebbie v. Cadle Co.,49 Conn. App. 265, 269 (June 30, 1998).
ALI subsequently sold the Gebbie obligation(s) to Cadle for $151,410. Cadle claimed it was not a party to the Gebbie-ALI agreement and was not bound by it. Gebbie brought this action to enforce the mortgage modification agreement. This court held that Gebbie had a binding agreement with ALI for the debt restructuring. It further held that Cadle was bound by ALI's agreement with Gebbie. This court held Gebbie was entitled to CT Page 9452 specific performance by Cadle.
The court ordered:
 "The court directs and orders that The Cadle Company submit to the plaintiff a mortgage modification agreement consistent with the terms of the March 14, 1995 letter and that said mortgage modification agreement shall be provided within 30 days of the date of judgment. The mortgage modification agreement shall be finalized and executed within 10 days after receipt of the same and thereafter promptly recorded on the land records." Memorandum of Decision, August 29, 1996 (filed August 30, 1996).
Upon execution of the mortgage modification, Gebbie was to pay Cadle $36,000.
Gebbie also claimed that Cadle's refusal to abide by the agreement was a violation of the Connecticut Unfair Trade Practices Act [CUTPA], C.G.S. § 42-110a et seq. This court held that Cadle's conduct was a CUTPA violation. Gebbie was awarded $13,781.25 for attorney's fees to be paid by Cadle.
Cadle appealed. The Appellate Court affirmed this court's decision. Gebbie v. Cadle Co., 49 Conn. App. 265 (June 30, 1998).
The appeal effectively placed the judgment on hold. The appeal was decided on June 30, 1998. (June 30, 1998).
Both parties have treated the date of the Appellate Court's decision as supplanting the date of the trial court judgment. Thus, the thirty-day period for Cadle to submit the mortgage modification agreement to the plaintiff began on June 30, 1998.
Shortly after the Appellate Court affirmance, Gebbie sent Cadle a check for $22,218.75. Gebbie arrived at this amount by subtracting the court awarded attorney's fees in the amount $13,781.25 from the $36,000 it was to pay Cadle pursuant to the now court-sanctioned modification agreement. Cadle refused the check.
To comply with the judgment's directive that it "submit to the plaintiff a mortgage modification agreement consistent with the terms of the March 14, 1995 letter," Cadle's attorney sent the following to Gebbie's lawyers: CT Page 9453
 RENEWAL, EXTENSION AND MODIFICATION AGREEMENT THIS AGREEMENT is made in New London County, Connecticut, this 3rd day of August, 1998, by and between THE CADLE COMPANY ("Lender"), an Ohio corporation chartered under the laws of Ohio which has its principal place of business at 100 North Center Street, Newton Falls, Trumbull County, Ohio 4444-1321 and DARWIN C. GEBBIE, an individual with an address of 27 York Road, Lebanon, Connecticut 06249 ("Borrower" whether one or more).
 RECITALS WHEREAS, Borrower executed and delivered a Promissory Note (the "Fitchville Road Note") dated December 15, 1988, in the principal sum of $280,000.00 payable to the order of New England Savings Bank, the provisions of which Fitchville Road Note are incorporated herein by reference for all purposes; and
 WHEREAS, payment of the Fitchville Road Note is secured by a Mortgage dated December 15, 1988, (the "Fitchville Road Mortgage"), which is recorded in Volume 44, Page 768 of the Land Records of Bozrah, Connecticut, the provisions of which Fitchville Road Mortgage are incorporated herein by reference for all purposes, which Fitchville Road Mortgage covered the real property and improvements (the "Property") more particularly described on Exhibit "A" which is attached hereto and incorporated herein by reference; and
 WHEREAS, Borrower executed and delivered a Promissory Note (the "Stockhouse Road Note") dated June 28, 1989, in the principal sum of $320,000.00 payable to the order of New England Savings Bank, the provisions of which Stockhouse Road Note are incorporated herein by reference for all purposes; and
 WHEREAS, payment of the Stockhouse Road Note is secured by a Mortgage dated June 28, 1989, (the "Stockhouse Road Mortgage"), which is recorded in Volume 45, Page 604 of the Land Records of Bozrah, Connecticut, the provisions of which Stockhouse Road Mortgage are incorporated herein by reference for all purposes, which Stockhouse Road Mortgage covered the real property and improvements (the "Property") more CT Page 9454 particularly described on Exhibit "B" which is attached hereto and incorporated herein by reference and modified by a Note and Mortgage Modification Agreement dated December 30, 1992 and recorded in Volume 51 at Page 884 of the Land Records of the Town of Bozrah; and
 WHEREAS, the Fitchville Road and Stockhouse Road Notes and the Fitchville Road and Stockhouse Road Mortgages have been transferred and assigned to Lender; and
 WHEREAS, the principal balance due and owing on the Fitchville Road Note as of the date of this agreement is $267,711.11; and
 WHEREAS, the principal balance due and owing on the Stockhouse Road Note as of the date of this agreement is $319,893.28; and
 WHEREAS, Borrower is in default under the terms of the Fitchville Road and Stockhouse Road Notes and the Fitchville Road and Stockhouse Road Mortgages; and
 WHEREAS, Borrower, being legally obligated for the payment of said indebtedness, now desires to modify the payment terms thereof and to renew and extend the Fitchville Road Mortgage; and
 WHEREAS, Borrower has executed and delivered to Lender a Promissory Note (the "Renewal Note") of even date herewith, the provisions of which are incorporated herein by reference.
 THEREFORE, for valuable consideration, including the mutual obligations contained herein and in the other instruments creating and securing the above described indebtedness, the receipt and sufficiency of which consideration is hereby acknowledged, Lender and Borrower agree as follows:
 1. Borrower hereby agrees to pay the sum of One Hundred Sixty Thousand and 00/100 Dollars ($160,000.00) to Lender as provided in the Renewal Note.
 2. Borrower hereby reaffirms the terms, conditions and provisions of the Fitchville Road and Stockhouse Road Mortgages which shall remain in full force and effect CT Page 9455 expressly as provided therein, Borrower hereby renews and extends the Fitchville Road and Stockhouse Road Mortgages and any other liens securing payment of the indebtedness represented by the Fitchville Road and Stockhouse Road Notes, the Renewal Note and by the terms of this agreement until all sums due hereon have been paid in full, and Borrower further agrees and acknowledges that the renewal and extension of said indebtedness and liens shall in no way affect or impair said indebtedness or liens and that said liens shall in no manner be waived by the execution of this agreement. Borrower further agrees and acknowledges that the indebtedness, as renewed and extended hereby, is valid, that it is due and unpaid and that Borrower has no defenses to the repayment of said indebtedness or to the enforcement of the Mortgage and any other liens securing payment of same. Borrower further represents and warrants that he is the current owner of the Property.
 3. For and in consideration of the lowering of the interest rate and the modification of the payment terms of said indebtedness by Lender as hereinabove set forth, the sufficiency of which is hereby acknowledged, Borrower hereby waives and declares to be fully satisfied any and all claims and counterclaims, rights or demands that he may have or be entitled to under any laws of the State of Connecticut or the United States to offset, cause a forfeiture of or recover any sum of money from Lender if, from any circumstance whatever, fulfillment of any provisions hereof or other document would be claimed as Lender's having contracted for, charged or received any interest on the Note at an unconscionable rate or at a greater rate than is allowed under applicable laws of the State of Connecticut or of the United States and for the same consideration, directors, agents and employees, from any and all claims, rights or demands of every nature, whether known or unknown, arising out of or caused by the unconscionable rate or at a greater rate than is allowed under the applicable laws of the State of Connecticut or of the United States. The terms and provisions of this agreement shall control and supersede any other provisions of the Note. Borrower further represents and agrees that the consideration to him described in this paragraph is greater than the value of all claims, rights and demands herein released and waived, and that this agreement is in full settlement and discharge of any and all such claims, rights and demands that Borrower may have or may become entitled to against Lender, its CT Page 9456 officers, directors, employees, agents, successors and assigns.
 EXECUTED on August 3, 1998, but effective the 30th day of August, 1996 as evidenced by the signatures of the parties hereinafter.
Gebbie crossed out the second to the last sentence of the paragraph numbered "2" and all of the paragraph numbered "3," executed it as so changed, and promptly returned it to Cadle's lawyer's.
Cadle immediately wrote Gebbie as follows:
 "On August 3, 1998, your counsel forwarded an executed Renewal Note and an executed copy of the Modification Agreement provided by The Cadle Company with certain portions deleted and initialed by you, as well as a check in the amount of $22,218.75.
 "This letter is to notify you that you are in default of the court order because of your failure to tender the sum of $36,00.00 within the time period set forth in the court's orders. In addition, your failure to execute the Modification Agreement we provided to you is another event of default. The provisions you deleted were consistent with normal commercial practices for loan workouts and are not inconsistent with the court's order." Letter, August 11, 1998, Jacobs, Walker, Rice Basche, P.C. (counsel for Cadle), to Darwin C. Gebbie, c/o O'Brien, Shafner, Stuart, Kelly, Morris, P.C. (counsel for Gebbie).
 "As a consequence of your default, the entire principal balance under the Notes is now due and owing. The principal balance due on the $280,000.00 Note is $267,711.11 and the principal balance due on the $320,000.00 Note is $319,893.28. The above amounts must be paid on or before September 10, 1998. Your payment should be forwarded directly to The Cadle Company, 100 North Center Street, Newton Falls, OH 44444. If payment in full is not made on or before September 11, 1998, The Cadle Company will seek legal means to collect the balance due." Letter, August 11, 1998, Jacobs, Walker, Rice Basche, P.C. (counsel for Cadle), to Darwin C. Gebbie, c/o O'Brien, Shafner, Stuart, Kelly, Morris, P.C. (counsel for Gebbie). CT Page 9457
Gebbie filed the instant Motion For Order In Aid Of Judgment, July 31, 1998. [147] In the motion, Gebbie sought a determination that its tender of the $22,218.75 and its deletions from the Cadle-drafted modification were appropriate. Gebbie asked the court to enter an order setting forth the terms of the modification which could be recorded on the land records as contemplated by this court's previous order. See Memorandum of Decision, August 29, 1996, p. 23. [134]
Regarding Gebbie's tender of $22,218.75, this court held that Gebbie was entitled to take a credit for the court-awarded attorney's fees when it paid the $36,000 payment due on the mortgage modification. The court held that Gebbie's tender of the $22,218.75 complied with the judgment. Memorandum of Decision, Motion For Order In Aid of Judgment, October 28, 1998. [152]
The court did not rule on the appropriateness of the modification prepared by Cadle or the propriety of the Gebbie deletions. That is because the necessary documents were not in the file or otherwise before the court.
Both parties have now brought the issue squarely before the court.
The court has examined the Cadle-drafted modification and the Gebbie deletions. In doing so, the court has been mindful of the history of this case. Cadle bought the Gebbie obligations for $151,400. Cadle was thereby entitled to $196,000; $360,000 "up front" and $160,000 over ten years with interest of 9.5 per cent on the portion of the $160,000 which was unpaid. Cadle was not satisfied with this return. Cadle insisted its $151,400 purchase price entitled it (Cadle) to an amount in the order of $600,000. Because Cadle refused to recognize the validity of the modification agreement, Gebbie had to bring this action. Gebbie prevailed in this court and on Cadle's appeal. Cadle's recalcitrance was found unjustified and resulted in its being ordered to pay Gebbie $13,718.25 in attorney's fees.
In this light, the court makes its analysis of the Cadle-drafted modification and Gebbie's deletions.
Gebbie crossed out the following from the paragraph numbered "2."

CT Page 9458 "Borrower further agrees and acknowledges that the indebtedness, as renewed and extended hereby, is valid, that it is due and unpaid and that Borrower has no defenses to the repayment of said indebtedness or to the enforcement of the Mortgage and any other liens securing payment of same."
The "indebtedness" in that sentence is the "indebtedness" thrice mentioned in the same paragraph. The term is used six times in all in the Cadle-drafted modification. In each instance the "indebtedness" is the same. It is the "indebtedness represented by the Fitchville Road and Stockhouse Road Notes." As the recitals of the Renewal, Extension and Modification Agreement prepared by Cadle state, the principal balance of the Fitchville Road and Stockhouse Road notes were $267,711.11 and $319,893.28, respectively. Interest was also due on each. As drafted by Cadle, the modification would have had Gebbie agree that Gebbie then (the time of the execution of the proposed modification agreement, i.e., August 1998) was indebted to Cadle in the principal amount of at least $587,604.39 plus accrued interest. As Cadle would have it, Gebbie would agree he (Gebbie) had no defenses to the $567,604.39 plus indebtedness. This is nonsense. Per the March 14, 1995 letter agreement and the judgment of this court, Gebbie was obligated to pay only $36,000 in cash and $160,000 over ten years. Surely the provision Gebbie deleted was not consistent with the March 14, 1995 letter or the court's judgment. In fact, if the deleted provision were taken at face value, in one fell swoop Cadle would have negated the March 14, 1995 agreement, the whole effect of this action including the judgment which had been affirmed. Cute!
The paragraph numbered "3" is no more appropriate.
By the first sentence of the paragraph numbered "3," Gebbie releases any and all claims Gebbie might have for usury or any other claims based on the interest rate. This provision has no antecedent in the March 14, 1995 letter. There is nothing in the record before this court that the rate of interest prescribed in the two original notes and mortgages were a cause of contention between Gebbie and ALI. If Cadle had misgivings about the legality of the rate of interest, it should not have bought the loans. As had been stated earlier by the court, "[i]t was not for Cadle to rewrite the deal." Memorandum of Decision, August 29, 1996, p. 21. [134]
The final sentence of the paragraph numbered "3" is an all CT Page 9459 encompassing release by Gebbie of all claims against Cadle. It is so broad that it would release Cadle's obligation to pay the $13,781.25 attorney's fee award of the judgment which award was affirmed on appeal.
But these release provisions go much further. Cadle's strategy and implementing conduct throughout has been to effect a reinstatement or "clawback" of the original indebtedness of roughly $600,000. The court has held:
 "Cadle's refusal to honor and effectuate the loans restructure agreement and their related conduct, including failing to release the foreclosure attachments and lis pendens, constitute a violation of the Act [CUTPA]." Memorandum of Decision August 29, 1996, p. 20. [134]
One result of "Cadle's refusal to honor and effectuate the loans restructure agreement and their related conduct" was a judgment, which in part, ordered it (Cadle) pay Gebbie a substantial amount in attorney's fees. Cadle has to know that its conduct since the August 30, 1996 judgment might be viewed as a continuation of its earlier conduct which was held and affirmed as violating CUTPA.
Thus, it is clear why Cadle inserted such a provision. But that does not make it appropriate or "consistent with" the March 14, 1995 letter. "The restructuring agreement [the March 14, 1995 letter] contained all the necessary terms and conditions to implement same." Memorandum of Decision, August 29, 1996, p. 21. [134]
These release provisions inserted by Cadle were not consistent with the March 14, 1995 letter or the judgment. Gebbie's deleting them was justified.
Cadle claims the judgment allowed it to insert commercially reasonable provisions in the modification as long as they were consistent with the March 14, 1995 letter. Whether that is a reasonable construction of the judgment is questionable. "The restructuring agreement [the March 14, 1995 letter] contained all the necessary terms and conditions to implement same." Memorandum of Decision, August 29, 1996, p. 21. [134] But the court need not decide that claim. No evidence was presented upon which a court could predicate a finding the now disputed terms of the modification as drafted by Cadle were commercially reasonable. Furthermore, the court did not decide this case in a vacuum. Even CT Page 9460 if the crossed-out terms in the context of other cases might be deemed commercially reasonable, they are not in the context of this case.
The court will enter an order setting forth the necessary modification for recording on the land records. Counsel for the parties shall arrange to meet with the court within the next week or ten days, the sooner the better. The court solicits the views of counsel as to the content of the order. At the meeting, the court will receive counsel suggestions on the content of the order. Why it is probably wishful thinking, if counsel can agree on the order, having in mind the views of the court as expressed herein, the meeting need not be held and much time and effort can be saved, The court reminds parties and counsel: "The restructuring agreement [the March 14, 1995 letter] contained all the necessary terms and conditions to implement same."
Memorandum of Decision, August 29, 1996, p. 21. [134]
The court holds that defendant Cadle did not comply with the court's judgment because it did not submit an appropriate modification agreement as ordered by the court. The court further holds that Gebbie's not executing the modification agreement as submitted by Cadle was justified.
Counsel are directed to contact each other and then the court to arrange a meeting to prepare a suitable order for recording.
Parker, J.
a:\CadleGeb.mod